**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**CASE NO:**

JUNIOR SMITH,
GREGG QUAGLIANO,
MIGUEL LUPIAN,
MARTIN HIDALGO,
TODD SAMPSON, and
JIM CAVANAUGH, on behalf of
themselves and all similarly
situated individuals,

    Plaintiff(s),

    v.

MOBILE MINI, INC.
a Delaware corporation,

    Defendant.
_____/

**CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiffs, JUNIOR SMITH ("Smith"), GREGG QUAGLIANO ("Quagliano"), MIGUEL LUPIAN ("Lupian"), MARTIN HIDALGO ("Hidalgo"), TODD SAMPSON ("Sampson"), and JIM CAVANAUGH ("Cavanaugh") (Smith, Quagliano, Lupian, Hidalgo, Sampson, and Cavanaugh, collectively referred to hereinafter as "Plaintiffs"), by and through undersigned counsel, hereby file this Class Action Complaint for Damages and Demand for Jury Trial against Defendant, MOBILE MINI, INC. (hereinafter referred as to "Defendant" or "Mobile Mini"), as follows:

**INTRODUCTION**

1. Plaintiffs bring this class action for damages and other legal and equitable remedy resulting from the illegal actions of Defendant, Mobile Mini, in collecting, storing and using

Plaintiff's, and other similarly situated individuals' biometric identifiers and biometric information (referred to collectively as "biometrics") without informed consent in violation of the Illinois Biometric Information Privacy Act ("BIPA").

2. The Illinois Legislature has determined that "[b]iometrics are unlike any other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5I. "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.*

3. Given the uniqueness and irreplicable nature of biometrics, biometric timekeeping devices are favored by employers because of these devices' inherent potential in preventing disadvantageous workplace misconduct, particularly "buddy punching" and time-theft.

4. As a result, biometric timekeeping devices have become particularly prevalent in the workplace.

5. In recognition of these concerns over the security of individuals' biometrics, the Illinois Legislature enacted BIPA.

6. As expressed herein, BIPA is the result of an expressed fundamental public policy and legislative intent in Illinois to regulate the collection of biometric information. BIPA provides, *inter alia*, that private entities like Defendant may not collect, capture, purchase, receive through trade, or otherwise obtain an individual's biometrics unless it: (1) informs that person in writing that biometric identifiers or information will be collected or stored; (2) informs that person in writing of the specific purpose and length of term for which such biometric identifiers or biometric information is being collected, stored and used; (3) receives a written release from the person for

the collection of his or her biometric identifiers or information; and (4) publishes publicly available written retention schedules and guidelines for permanently destroying biometric identifiers and biometric information. *See* 740 ILCS 14/15(a) and (b).

7. In direct violation of each of the foregoing provisions of 15(a) and 15(b) of BIPA, Defendant, Mobile Mini, actively collected, stored, and used the biometrics of employees, including Plaintiff, through its biometric timekeeping system, without providing notice, obtaining informed written consent, or publishing data retention policies.

8. Specifically, during the relevant time period, Defendant, a transportation and logistics corporation, required Plaintiffs and other similarly situated individuals to use driver-facing cameras to monitor them as they drove Mobile Mini trucks in order to reduce accident-related costs.

9. Defendant used the camera and videotaping technology in its trucks to collect and store its drivers' biometrics.

10. Plaintiff brings this action on behalf of herself and a class of similarly situated individuals to prevent Defendant from further violating privacy rights and to recover statutory damages for Defendant's unauthorized collection, storage and use of Plaintiff's biometrics in violation of BIPA.

## PARTIES, JURISDICTION & VENUE

11. Plaintiff, Smith, is and has been at all relevant times, a resident and citizen of the State of Illinois.

12. Smith was employed by Defendant, Mobile Mini, as a truck driver from April 2021 through March 2023, at Defendant's locations in Calumet Park, Illinois, and Elgin, Illinois.

13. Smith has been required by Defendant to have his face scanned while performing his daily duties within the five (5) year period prior to the filing of this Complaint.

14. Smith, never consented, agreed or gave permission—written or otherwise—to Defendant, Mobile Mini, for the collection, storage, or use of the biometric identifiers or biometric information associated with geometric scans of his face.

15. Further, Defendant, Mobile Mini, never provided Plaintiff, Smith, nor did Smith ever sign, a written release allowing Defendant, Mobile Mini, to collect, store, or use the biometrics associated with his face.

16. Plaintiff, Quagliano, is and has been at all relevant times, a resident and citizen of the State of Illinois.

17. Plaintiff, Quagliano, was employed by Defendant, Mobile Mini, as a truck driver from May 2022 through October 2022, at Defendant's locations in Calumet Park, Illinois, and Elgin, Illinois.

18. Quagliano, has been required by Defendant to have his face scanned while performing his daily duties within the five (5) year period prior to the filing of this Complaint.

19. Quagliano, never consented, agreed or gave permission—written or otherwise—to Defendant, Mobile Mini, for the collection, storage, possession, or use of the biometrics associated with geometric scans of his face.

20. Further, Defendant, Mobile Mini, never provided to Plaintiff, Quagliano, nor did he ever sign, a written release allowing Defendant, Mobile Mini, to collect, store, possess or use the biometric identifiers or biometric information associated with his face.

21. Plaintiff, Lupian, is and has been at all relevant times, a resident and citizen of the State of Illinois.

22. Plaintiff, Lupian, was employed by Defendant, Mobile Mini, as a truck driver from July 2021 through March 17, 2023, at Defendant's locations in Calumet Park, Illinois, and Elgin, Illinois.

23. Lupian has been required by Defendant to have his face scanned while performing his daily duties within the five (5) year period prior to the filing of this Complaint.

24. Lupian never consented, agreed or gave permission—written or otherwise—to Defendant, Mobile Mini, for the collection, storage, or use of the biometrics associated with geometric scans of his face.

25. Further, Defendant, Mobile Mini, never provided to Lupian, nor did Lupian ever sign, a written release allowing Defendant, Mobile Mini, to collect, store, or use the biometric identifiers or biometric information associated with his face.

26. Plaintiff, Hidalgo, is and has been at all relevant times, a resident and citizen of the State of Illinois.

27. Plaintiff, Hidalgo, has been employed by Defendant, Mobile Mini, as a truck driver for the past 7 years, at Defendant's locations in Calumet Park, Illinois, and Elgin, Illinois.

28. Hidalgo has been required by Defendant to have his face scanned while performing his daily duties within the five (5) year period prior to the filing of this Complaint.

29. Hidalgo never consented, agreed or gave permission—written or otherwise—to Defendant, Mobile Mini, for the collection, storage, or use of the biometrics associated with geometric scans of his face.

30. Further, Defendant, Mobile Mini, never provided to Hidalgo, nor did Hidalgo ever sign, a written release allowing Defendant, Mobile Mini, to collect, store, or use the biometric identifiers or biometric information associated with his face.

31. Plaintiff, Sampson, is and has been at all relevant times, a resident and citizen of the State of Illinois.

32. Plaintiff, Sampson, was employed by Defendant, Mobile Mini, as a truck driver from March 2020 through August 2021, at Defendant's location in Elgin, Illinois.

33. Sampson has been required by Defendant to have his face scanned while performing his daily duties within the five (5) year period prior to the filing of this Complaint.

34. Sampson never consented, agreed or gave permission—written or otherwise—to Defendant, Mobile Mini, for the collection, storage, or use of the biometric identifiers or biometric information associated with geometric scans of his face.

35. Further, Defendant, Mobile Mini, never provided Plaintiff, Sampson, nor did Sampson ever sign, a written release allowing Defendant, Mobile Mini, to collect, store, or use the biometrics associated with his face.

36. Plaintiff, Cavanaugh, is and has been at all relevant times, a resident and citizen of the State of Illinois.

37. Plaintiff, Cavanaugh, was employed by Defendant, Mobile Mini, as a truck driver from January 2022 through present, at Defendant's location in Calumet Park, Illinois and/or Elgin, Illinois.

38. Cavanaugh has been required by Defendant to have his face scanned while performing his daily duties within the five (5) year period prior to the filing of this Complaint.

39. Cavanaugh never consented, agreed or gave permission—written or otherwise—to Defendant, Mobile Mini, for the collection, storage, or use of the biometric identifiers or biometric information associated with geometric scans of his face.

40. Further, Defendant, Mobile Mini, never provided Plaintiff, Cavanaugh, nor did Cavanaugh ever sign, a written release allowing Defendant, Mobile Mini, to collect, store, or use the biometrics associated with his face.

41. Defendant is a Delaware corporation, registered to do business under the laws of Illinois. Defendant may be served through its registered agent, Illinois Corporation Service, located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

42. Accordingly, Defendant, Mobile Mini, is present in the State of Illinois, operates a business in Illinois, and is subject to the laws of Illinois.

43. Defendant, Mobile Mini, has employed Plaintiffs and hundreds of other individuals in the State of Illinois within the past 5 years.

44. This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA"). Defendant, Mobile Mini, is a Delaware corporation that has complete diversity of citizenship with every member of the putative Class. Moreover, the amount in controversy exceeds $5,000,000.00. Pursuant to BIPA, each member of the Class is entitled to recover $1,000.00 for each negligent violation of BIPA and $5,000.00 for each intentional violation of BIPA. Plaintiffs allege that the Class consists of at least 100 individuals.

45. This Court has personal jurisdiction over Defendant, Mobile Mini, because Defendant, Mobile Mini, is operating in Illinois and maintains a place of business in Illinois. Defendant, Mobile Mini, collected, obtained, and/or used the biometric information of Illinois residents at its place of business in Illinois and maintains such minimum contacts with Illinois to make this Court's exercise of jurisdiction proper. Defendant, Mobile Mini, engages in continuous and systematic business operations or activities within Illinois and maintains a location in the State, including within Calumet Park, Illinois, and Elgin, Illinois, within this judicial circuit.

46. Venue is proper in this Court because Defendant, Mobile Mini, maintains its place of business within this District, transacts substantial business within this District, and the events giving rise to this lawsuit occurred in substantial part within this District.

## FACTUAL BACKGROUND

47. Defendant, Mobile Mini, specializes in the transportation of portable storage units and advertises itself as "the world's leading provider of portable storage solutions, committed to providing our customers with superior services and access to a high-quality and diverse fleet." *See* www.mobilemini.com/about-us (last visited September 15, 2023).

48. Defendant, Mobile Mini, hires truck drivers to transport its portable storage units.

49. Defendant operates in Illinois from locations in Calumet Park and Elgin.

50. Plaintiffs and the Class were all employed by Defendant, Mobile Mini, in the State of Illinois during periods of time within the past five (5) years.

51. During the 5 years preceding the filing of this lawsuit, Defendant, Mobile Mini, employed hundreds of truck drivers, including Plaintiffs, and required its truck drivers to scan their faces daily in biometric devices in order to perform their primary work duties – namely to operate company trucks.

### DEFENDANT, MOBILE MINI, USES LYTX TECHNOLOGY TO OBTAIN, CAPTURE, COLLECT, AND USE PLAINTIFFS' BIOMETRIC INFORMATION

52. Lytx, Inc. ("Lytx") is a video telematics and fleet management systems corporation based out of San Diego, California. Lytx provides its services to various companies engaged in the transportation industry. Lytx offers a suite of technologies to provide services to its transportation clients, including sensors which monitor the location and movement of the truck itself, and the truck's position in relation to other vehicles or objects on the road, and cameras which monitor and record video of both the inside of the cab and the outside of the vehicle.

53. However, Lytx's premier technology is its machine vision and artificial technology capabilities—referred to by Lytx as its "MV+AI system" or "MV+AI." Lytx employs this MV+AI technology in its SF-300 DriveCam ("DriveCam"), a camera which records video footage of the interior cab of the truck in order to monitor the driver.

54. The DriveCam does more than simply record images; in conjunction with the MV+AI, the DriveCam scans the driver's face geometry and harnesses those biometric data points by feeding them into sophisticated algorithms that identify the driver's actions.

55. The DriveCam, equipped with MV+AI, ultimately provides the Lytx AI Risk-Detection service by relying upon sophisticated algorithms to identify unsafe driving behavior and prompting drivers with in-cab alerts to help them self-correct in the moment.

56. Further, in order to achieve its risk-detection objectives, the DriveCam uses the MV+AI technology to constantly monitor and analyze the goings-on inside trucks operated and driven by Class Members.

57. This constant monitoring achieved by the DriveCam fundamentally relies on face detection MV+AI technology as described.

58. Thus, the MV+AI technology underlying the DriveCam requires the collection and possession of biometric data points derived constituting Plaintiffs' facial geometry.

59. More specifically, an algorithm is first "trained" to recognize faces in a video after being fed hundreds of thousands of images of drivers and their behaviors. The video footage is then reviewed and tagged by humans. Finally, tagged video is then again fed into the algorithm in order to teach it which data should be considered "relevant."

60. That algorithm is then deployed in the MV+AI technology behind the DriveCam. The camera scans a driver's face geometry, identifying a host of unique points around multiple

regions of the driver's face (i.e. each eye, the mouth, the nose, the lips, etc.). Once the DriveCam has successfully detected a driver is present (via a scan of face geometry), the DriveCam then applies the MV+AI algorithm described *infra*, and identifies not only the presence of the driver, but also what the driver is doing in real time.

61. During the past 5 years, Defendant, Mobile Mini, has contracted with Lytx to incorporate the Lytx MV+AI-enabled DriveCam into Mobile Mini's trucks.

62. Starting in 2015, Defendant, Mobile Mini, installed the Lytx DriveCam in nearly all 600 of the vehicles it owned and operated at the time including the vehicles it operated in Illinois. *See* "How Mobile Mini Shaved Months Off Costly Legal Wrangling," attached hereto as **Exhibit A**.

63. Defendant, Mobile Mini, worked directly with Lytx engineers to install and implement the Lytx DriveCam surveillance and monitoring system.

64. Mobile Mini's implementation of the Lytx DriveCam system is problematic because the DriveCam violates the rights of Mobile Mini's Illinois employees by scanning their faces and acquiring their facial geometry and other biometrics in violation of the drivers' statutorily protected rights under BIPA.

65. The act of scanning drivers' face geometry and storing those biometrics in a Lytx device, facility, or server, exposes drivers' sensitive personal data to privacy risks.

66. For example, if a Lytx device, facility, or server becomes compromised through a data security breach, sensitive personal information based on the scans of these drivers' face geometry could be used to steal their identities or to track them.

67. Plaintiffs Smith, Quagliano, Lupian, and Hidalgo were truck drivers for Mobile Mini during the past 5 years, and during the course of their employment drove Mobile Mini trucks on many occasions, all while being recorded by the DriveCam system.

68. In each instance that the Plaintiffs drove or were otherwise present in the Mobile Mini trucks, each Plaintiff had his facial geometry scanned, collected and captured by Mobile Mini, through the technological devices and equipment that Mobile Mini equipped its trucks with, and in violation of BIPA.

## FACIAL GEOMETRIC SCANS CONSTITUTE BIOMETRIC INFORMATION

69. Plaintiffs' facial geometric scans are expressly "biometric identifiers" as that term is defined under BIPA. 740 ILCS 14/10.

70. Plaintiffs' facial geometric scans are also "biometric information" as that term is defined under BIPA.

71. Defendant, Mobile Mini, failed to obtain express written consent from Plaintiffs when it introduced biometric technology in connection with its implementation of Lytx and Samsara devices prior to actively collecting, possessing, and otherwise obtaining Plaintiff's biometric information.

72. The actions of Defendant, Mobile Mini, violate the Plaintiffs' statutory privacy rights under BIPA.

73. In violation of Section 15(b), Defendant, Mobile Mini, never informed Plaintiffs of the specific purpose and length of time for which their biometric identifiers or information would be collected, stored and used, nor did Defendant, Mobile Mini, obtain a written consent or release from Plaintiffs. 740 ILCS 14/15(b).

74. In violation of Section 15(a) of BIPA, Defendant, Mobile Mini, did not have written, publicly available policies identifying their retention schedules or guidelines for permanently destroying users' biometric identifiers or information. 740 ILCS 14/15(a).

75. Plaintiff has been required to retain the undersigned counsel to protect and enforce her rights under BIPA and is therefore entitled to recover reasonable attorney's fees and costs.

## CLASS ALLEGATIONS

76. Class Definition: Plaintiffs bring this action pursuant to 735 ILCS 5/2-801-807 and/or Fed. R. Civ. P. 23 on behalf of a class of similarly situated individuals, defined as follows (hereinafter "the Class"):

> **All individuals formerly and/or currently employed by MOBILE MINI, INC., within the past 5 years in Illinois who had their biometric identifiers, including "facial scans" collected, captured, received, or otherwise obtained by Defendant.**

77. The following are excluded from the Class: (1) any Judge presiding over this action and members of his or her family; (2) persons who properly executed and file a timely request for exclusion from the Class; (3) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (4) Plaintiff's counsel and Defendant's counsel; and (6) legal representatives, successors, and assigns of any such excluded persons.

78. **Numerosity**: The number of persons within the Class is substantial and is believed to amount to hundreds of people. It is, therefore, impractical to join each member of the Class as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

79. **Commonality and Predominance**: There are well-defined common questions of facts and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any class member include, but are not limited to, the following:

   (a) whether Defendant collected or otherwise obtained Plaintiffs' and the Class's biometric identifiers or biometric information;

   (b) whether Defendant properly informed Plaintiffs and the Class that it collected, used, and stored their biometric identifiers or biometric information;

   (c) whether Defendant obtained a written release (as defined in 740 ILCS 1410) to collect, use, and store Plaintiffs' and the Class's biometric identifiers or biometric information;

   (d) whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometrics information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of their last interaction, whichever occurs first;

   (e) whether Defendant used Plaintiffs' and the Class's biometric identifiers or biometric information to identify them; and

   (f) whether Defendant's violations of the BIPA were committed intentionally, reckless, or negligently.

80. **Adequate Representation**: Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex employment class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this class action.

Neither Plaintiffs nor their counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Class. Plaintiffs are able to fairly and adequately represent and protect the interests of such a Class. Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims. If necessary, Plaintiffs may seek leave of this Court to amend this Class Action Complaint to include additional Class representatives to represent the Class or additional claims as may be appropriate.

81. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiffs anticipate no difficulty in the management of his action as a class action. Class wide relief is essential to compel compliance with the BIPA.

### COUNT I – VIOLATION OF 740 ILCS 14/15(a) FOR FAILURE TO INSTITUTE, MAINTAIN, AND ADHERE TO PUBLICLY AVAILABLE RETENTION SCHEDULE
(On Behalf of Plaintiff and the Class)

82. Plaintiff hereby incorporates the allegations within Paragraphs 1-81 as though fully set forth herein.

83. Defendant is an Illinois corporation that operates business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

84. BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

85. As a private entity covered under BIPA, Defendant has failed and continues to fail to comply with these BIPA mandates.

86. Plaintiff and members of the putative class are individuals who had their "biometric identifiers" collected by Defendant, as explained in detail above. *See* 740 ILCS 14/10.

87. At all times material hereto, Defendant owned and operated the Mini Mobile trucks equipped with Lytx and Samsara biometric technology.

88. Defendant possessed Plaintiff's and Class Members' biometrics because it held their biometrics at its disposal for use in the adoption, maintenance, and operation of the Lytx and Samsara biometric artificial intelligence and surveillance and/or monitoring programs.

89. Defendant possession of Plaintiff's and Class Members' biometrics is also evidenced by its exercise of control over the biometrics, which it collected and generated through technological devices that it installed in its Mobile Mini trucks.

90. Plaintiff's and putative class members' biometric identifiers were used to identify Plaintiffs and, therefore, constitute "biometric information" as defined by BIPA. *See* ILCS 14/10.

91. Further, Plaintiff's and the putative class members' facial geometry are "biometric identifiers" as that term is defined by BIPA. *See* 740 ILCS 14/10.

92. Defendant failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS 14/15(a).

93. Defendant lacks retention schedules and guidelines for permanently destroying Plaintiffs' and the Class's biometric data and have not and will not destroy Plaintiffs' and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

94. On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive relief and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorney's fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

### COUNT II – VIOLATION OF 740 ILCS 14/15(b) FOR FAILURE TO OBTAIN INFORMED WRITTEN CONSENT AND RELEASE BEFORE OBTAINING BIOMETRIC IDENTIFIERS OR INFORMATION
**(On Behalf of Plaintiff and the Class)**

95. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

96. Defendant, Mobile Mini, is a Delaware corporation that operates in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

97. BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject… in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject… in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information…" *See* 740 ILCS 14/15(b).

98. Defendant failed and still fails to comply with these BIPA mandates.

99. Plaintiff and members of the putative class are individuals who have had their "biometric identifiers" collected by Defendant, as explained in detail above. *See* 740 ILCS 14/10.

100. Plaintiff's and the Class' biometric identifiers were used to identify them and, therefore, constitutes "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

101. Defendant systematically and automatically collected, used, stored, and disseminated Plaintiff's and the Class's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

102. Defendant never informed Plaintiffs and the Class in writing that their biometric identifiers and/or biometric information were being collected, stored, used and disseminated, nor did Defendant inform Plaintiffs and the Class in writing of the specific purpose(s) and length of term for which their biometric identifiers and/or biometric information were being collected, stored, used, and disseminated as required by 740 ILCS 14/15(b)(1)-(2).

103. By collecting, storing, using and disseminating Plaintiffs' and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiffs' and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, et. seq.

104. On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive relief and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorney's fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, JUNIOR SMITH, GREGG QUAGLIANO, MIGUEL LUPIAN, MARTIN HIDALGO, TODD SAMPSON, and JIM CAVANAUGH, on behalf of themselves and the proposed Class, respectfully requests that this Court enter an Order:

(A) Certifying this case as a class action on behalf of the Class above, appointing Plaintiffs as representatives of the class, and appointing their counsel as Class Counsel;

(B) Declaring that Defendant's actions, as set out above, violate BIPA, 740 ILCS 14/1 *et seq.;*

(C) Awarding statutory damages of $5,000.00 for each and every intentional and reckless violation of the BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages

of $1,000.00 pursuant to 740 ILCS 14/20(1) if the Court finds that Defendant's violations were negligent;

(D) Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia,* an order requiring Defendant to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

(E) Awarding Plaintiffs and the Class their reasonable litigation expenses and attorney's fees;

(F) Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

(G) Awarding such other and further relief as equity and justice may require.

## JURY TRIAL DEMAND

Plaintiffs, JUNIOR SMITH, GREGG QUAGLIANO, MIGUEL LUPIAN, MARTIN HIDALGO, TODD SAMPSON, and JIM CAVANAUGH, demand a trial by jury on all issues so triable on behalf of themselves and the class.

Dated: September 15, 2023.

Respectfully Submitted,

JORDAN RICHARDS PLLC
1800 SE 10th Ave. Suite 205
Fort Lauderdale, Florida 33316
Ph: (954) 871-0050
*Counsel for Plaintiff*

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Illinois Bar No. 6328923
jordan@jordanrichardspllc.com
michael@usaemploymentlawyers.com
natalie@usaemploymentlawyers.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing document was served on all parties below on September 15, 2023.

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Illinois Bar No. 6328923

## SERVICE LIST: